KAREN P. HEWITT
United States Attorney
LAWRENCE A. CASPER
Assistant U.S. Attorney
California State Bar No. 235110
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone No.: (619) 557-7455
Facsimile No.:  (619) 235-2757
Lawrence.Casper@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>       v.<br><br>EDUARDO HERNANDEZ-BAHENA,<br><br>               Defendant. | Criminal Case No.  07CR2871-DMS<br><br>District Judge:        Hon. Dana S. Sabraw<br>Courtroom:             10<br>Date:                      January 18, 2008<br>Time:                      11:00 a.m.<br><br>UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:<br><br>(1)  DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION;<br>(2) DISMISS INDICTMENT FOR FAILURE TO ALLEGE ELEMENTS;<br>(3) STRIKE SURPLUSAGE;<br>(4) PRODUCE GRAND JURY TRANSCRIPTS;<br>(5) GIVE NOTICE UNDER RULE 12.2; and<br>(6) GRANT LEAVE TO FILE FURTHER MOTIONS<br><br>TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES |

Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel KAREN P.

HEWITT, United States Attorney, and LAWRENCE A. CASPER, Assistant U.S. Attorney, hereby

files its Response and Opposition (R&O) to the above-described motions of Defendant Eduardo

Hernandez-Bahena ("Defendant").  This R&O is based upon the files and records of this case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I**

**STATEMENT OF FACTS**

A.      **Statement of the Case**

On October 17 2007, a federal grand jury handed up a one-count Indictment charging Defendant Eduardo Hernandez-Bahena with: (1) one count of attempted entry after deportation in violation of Title 8, United States Code, Section 1326. Defendant entered a not guilty plea before Judge Dana M. Sabraw on November 30, 2007.

B.      **Statement of Facts**

On August 23, 2007, at approximately 5:20 p.m., Border Patrol Agent Fernando Fregoso was performing line watch duties in an area known as "Sony" that is approximately five miles east of the San Ysidro Port of Entry and 40 yards north of the International Boundary fence separating the United States and Mexico. This area is commonly used by aliens to further their illegal entry into the United States. At approximately 4:35 p.m., Agent Fernando Fregoso was contacted by radio and informed that a group of individuals had crossed the International Boundary fence and were running north. Upon approaching the area, Agent Fregoso observed a group of approximately eight individuals attempting to climb over the secondary fence, located approximately 40 yards north of the primary fence, using a home made ladder. Agent Fregoso was in full uniform and driving a marked service vehicle. He attempted to stop the group from going over the secondary fence but when the group observed him they ran in different directions and returned to Mexico. One individual, later identified as Defendant Eduardo Hernandez-Bahena, however, was left by the group hanging on top of the secondary fence.

Agent Fregoso attempted to assist this individual in getting down but six individuals jumped back into the United States and aggressively began to surround the agent. The agent suspended his effort to assist Defendant and prepared to stop the group. The group again ran back to the primary fence and returned to Mexico. The agent turned his attention back to the Defendant who had fallen from the fence and was lying on the ground. Defendant told the agent he was alright and did not require medical attention. Agent Fregoso identified himself as a Border Patrol agent and performed

an immigration inspection.  Defendant admitted to being a Mexican citizen with no legal right to enter or remain in the United States.  Defendant was placed under arrest.

Due to a computer failure at the Imperial Beach Border Patrol Station, Defendant was not processed and advised of his <u>Miranda</u> rights until the following day.  After Defendant was advised of his <u>Miranda</u> rights in English by Agent Fregoso, as witnessed by Border Patrol Agent Kevin Zoetewey.  Subsequently, on August 23, 2007, at approximately 2:30 p.m., Defendant requested medical attention and was transported to UCSD Medical Center for care.

### C.    Defendant's Criminal History

Defendant, who is 39 years old, has an extensive criminal history as detailed below:

| 11/17/2006 (CASC, Los Angeles) | 273.6(A) PC - Violate Court Order to Prevent Domestic Violence | 60 days jail/36 mos probation |
| 11/29/1999 (CASC, Los Angeles) | 459 PC - Burglary: Second Degree | 32 mos jail |
| 6/22/1998 (CASC, Los Angeles) | 211 PC - Robbery: Second Degree | 2 years jail |
| 9/21/1995 (CAMC, Los Angeles) | 245(A)(1) PC - Force/ADW Not Firearm: GBI Likely | 140 days jail |
| 8/12/1993 (CASC, Los Angeles) | 11350(A) HS - Possess Narc Cont Subst. | 72 days jail/36 mos probation; prob reinstated 4/24/96, 117 days jail |

### D.    Defendant's Immigration History

Defendant has been apprehended for being in the United States illegally on at least three prior occasions.  He was ordered deported on March 4, 1999, after a hearing before an immigration judge.  He was most recently removed from the United States on May 17, 2007, approximately three months before his arrest in this case.

07CR2871-DMS

## II

## ARGUMENT

### A.     The Grand Jurors Were Properly Instructed

#### 1.     Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007. [Memorandum of Points and Authorities, pp. 1-9 (hereinafter "Memorandum")[1/] Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed. In fact, the identical arguments advanced by Defendant here have recently been rejected in a 12 page written order issued by the Hon. Barry T. Moskowitz in this District, see Order Denying Defendant's Motion to Dismiss the Indictment in United States v. Manuel Martinez-Covarrubias, No. 07cr0491-BTM, filed October 11, 2007 (Appendix 3, hereto) and Amended Order Denying Defendant's Motion to Dismiss the Indictment in United States v. Diana Jimenez-Bermudez, 07cr1372-JAH (Appendix 4, hereto).

.     In making his arguments concerning the two separate instructions, Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures. [Memorandum at 11]. This is a practice the Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. "). [Id.] Isgro reiterated:

---

[1]     A "Partial Transcript" of the grand jury proceedings which records the instructions to the impaneled grand jurors after the voir dire had been conducted is supplied with this response. [Appendix I.] A redacted "Supplemental Transcript" which records relevant portions of the voir dire proceedings is also provided. [Appendix 2.]

07CR2871-DMS

[A] district court may draw on its supervisory powers to dismiss an indictment.   The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice."   Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.     Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added).   Concerning the second attacked instruction, in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment.   Concerning that kind of a contention <u>Isgro</u> stated:

[A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding.   "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant."   Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).[2/]

The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.   That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems.   It is entirely proper that you should receive this assistance.   If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the

---

[2]   In <u>Isgro</u> the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries.   They did not prevail. 974 F.2d at 1096 ("we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment."   (relying on <u>Williams</u>)).

policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[3/] 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties.   The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution.   The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . .   The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

2.     The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.

> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you.   That's a judgment that congress makes.

> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient."   Instead, your obligation is to  contact your congressman or

---

[3]    The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it. "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional.   For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's motives are not open to examination." 408 F.3d at 1204 (emphasis in original).

1

advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

2

Partial Transcript pp. 8-9.[4]

3

4    Defendant acknowledges that, in line with <u>Navarro-Vargas</u>, "Judge Bums instructed the

5    grand jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by

6    Congress; that is, whether or not there should be a federal law or should not be a federal law

7    designating certain activity [as] criminal is not up to you.'" [Memorandum p. 2.] Defendant notes,

8    however, that "[t]he instructions go beyond that, however, and tell the grand jurors that, should 'you

9    disagree with that judgment made by Congress, then your option is not to say 'well, I'm going to vote

10   against indicting even though I think that the evidence is sufficient' or 'I'm going to vote in favor of

11   even though the evidence maybe insufficient.'" [Memorandum p. 2.] Defendant contends that this

12   addition to the approved instruction, "flatly bars the grand jury from declining to indict because the

13   grand jurors disagree with a proposed prosecution." [Memorandum p. 2.] Defendant further

14   contends that the flat prohibition was preemptively reinforced by Judge Burns when he "referred to

15   an instance in the grand juror selection process in which he excused three potential jurors," which

16   resulted in his "not only instruct[ing] the grand jurors on his view of their discretion; [but his]

17   enforc[ing] that view on pain of being excused from service as a grand juror."[5] [Memorandum p.

3.]

18

19   In concocting his theory of why Judge Burns erred, Defendant posits that the expanded

20   instruction renders irrelevant the debate about what the word "should" means. [Memorandum p 3.]

21   Defendant's argument mixes-up two of the holdings in <u>Navarro-Vargas</u> in the hope they will blend

22   into one. They do not.

23

24

25   [4]    The Supplemental Transcript supplied herewith (Appendix 2) recounts the excusing of the three individuals. This transcript involves the voir dire portion of the grand jury selection process, and has been redacted, to include redaction of the individual names, to provide only the relevant three incidents wherein prospective grand jurors were excused. Specifically, the pages of the Supplemental Transcript supplied are: page 15, line 10 - page 17, line 18; page 24, line 14 - page 28, line 2; page 38, line 9 - page 44, line 17.

26

27

28   [5]    <u>See</u> Appendix 2.

1    <u>Navarro-Vargas</u> does permit flatly barring the grand jury from disagreeing with the wisdom

2    of the criminal laws.  The statement, "[y]ou <u>cannot</u> judge the wisdom of the criminal laws enacted

3    by Congress," (emphasis added) authorized by <u>Navarro-Vargas</u>, 408 F.3d at 1187, 1202, is not an

4    expression of discretion.  Jury nullification is forbidden although acknowledged as a sub rosa fact

5    in grand jury proceedings.  408 F.3d at 1204.  In this respect Judge Burns was absolutely within his

6    rights, and within the law, when he excused the three prospective grand jurors because of their

7    expressed inability to apply the laws passed by Congress.  Similarly, it was proper for him to remind

8    the impaneled grand jurors that they could not question the wisdom of the laws.  As we will

9    establish, this reminder did not pressure the grand jurors to give up their discretion not to return an

10   indictment.  Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from

11   declining to indict because the grand jurors disagree with a proposed prosecution, because they do

12   not say that.  That aspect of a grand jury's discretionary power (i.e. disagreement with the

13   prosecution) was dealt with in <u>Navarro-Vargas</u> in its discussion of another instruction wherein the

14   term "should" was germane.[6]  408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found").

15   This other instruction bestows discretion on the grand jury not to indict.[7]  In finding this instruction

16

17   [6]         That instruction is not at issue here.  It read as follows:

18           [Y]our task is to determine whether the government's evidence as presented
             to you is sufficient to cause you to conclude that there is probable cause to believe
19           that the accused is guilty of the offense charged.  To put it another way, you should
             vote to indict where the evidence presented to you is sufficiently strong to warrant
20           a reasonable person's believing that the accused is probably guilty of the offense with
             which the accused is charged.
21
22   408 F.3d at 1187.

23   [7]         The court upheld the instruction stating:

24           This instruction does not violate the grand jury's independence.    The
             language of the model charge does not state that the jury "must" or "shall" indict, but
25           merely that it "should" indict if it finds probable cause.    As a matter of pure
             semantics, it does not "eliminate discretion on the part of the grand jurors," leaving
26           room for the grand jury to dismiss even if it finds probable cause.

27   408 F.3d at 1205 (confirming holding in <u>United States  v. Marcucci</u>, 299 F.3d 1156, 1159 (9th Cir.
     2002) (per curiam)).  "In this respect, the grand jury has even greater powers of nonprosecution than
28   the executive because there is, literally, no check on a grand jury's decision not to return an
     indictment.  408 F.3d at 1206.

                                                    8                              07CR2871-DMS

1   constitutional, the court stated in words that ring true here, "It is the grand jury's position in the

2   constitutional scheme that gives it its independence, not any instructions that a court might offer."

3   408 F.3d at 1206.  The other instruction was also given by Judge Burns in his own fashion as

4   follows:

5           The function of the grand jury, in federal court at least, is to determine
        probable cause.  That's the simple formulation that I mentioned to a number of you
6       during the jury selection process.  Probable cause is just an analysis of whether a
        crime was committed and there's a reasonable basis to believe that and whether a
7       certain person is associated with the commission of that crime, committed it or
        helped commit it.
8
            If the answer is yes, then as grand jurors your function is to find that the
9       probable cause is there, that the case has been substantiated, and it should move
        forward.  If conscientiously, after listening to the evidence, you say "No, I can't form
10      a reasonable belief has anything to do with it, then your obligation, of course, would
        be to decline to indict, to turn the case away and not have it go forward.
11
    Partial Transcript pp. 3-4.
12
            Probable cause means that you have an honestly held conscientious belief and
13      that the belief is reasonable that a federal crime was committed and that the person
        to be indicted was somehow associated with the commission of that crime.  Either
14      they committed it themselves or they helped someone commit it or they were part of
        a conspiracy, an illegal agreement, to commit that crime.
15
            To put it another way, you should vote to indict when the evidence presented
16      to you is sufficiently strong to warrant a reasonable person to believe that the
        accused is probably guilty of the offense which is proposed.
17
    Partial Transcript p. 23.
18
        While the new grand jurors were told by Judge Burns that they could not question the
19
    wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the
20
    discretion not to return an indictment per Navarro-Vargas.  Further, if a potential grand juror could
21
    not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be
22
    dismissed as a potential jury nullification advocate.  See  Merced v. McGrath, 426 F.3d 1076, 1079-
23
    80 (9th Cir. 2005).  Thus, there was no error requiring dismissal of this Indictment or any other
24
    indictment by this Court exercising its supervisory powers.
25
        Further, a reading of the dialogues between Judge Burns and the three excused jurors found
26
    in the Supplemental Transcript excerpts (Appendix 2) reflects a measured, thoughtful, almost mutual
27
    decision, that those three individuals should not serve on the grand jury because of their views.
28

1    Judge Burns' reference back to those three colloquies cannot be construed as pressuring the

2    impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

3           Finally, even if there was an error, Defendant has not demonstrated he was actually

4    prejudiced thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt

5    that the decision to indict was free from the substantial influence of [the misconduct]'--a dismissal

6    is not warranted." Isgro, 974 F.2d at 1094.

7                    3.    The Addition to the "United States Attorney and his Assistant United
                          States Attorneys" Instruction Did Not Violate the Constitution
8
9           Concerning the new grand jurors' relationship to the United States Attorney and the Assistant

10   U.S. Attorneys, Judge Burns variously stated:

11          [T]here's a close association between the grand jury and the U.S. Attorney's Office.

12           .   .  .  .  You'll work closely with the U.S. Attorney's Office in your
            investigation of cases.

13   Partial Transcript p. 11.

14          [I]n my experience here in the over 20 years in this court, that kind of tension does
            not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand
15          juries.  They generally work together.

16   Partial Transcript p. 12.

17          Now, again, this emphasizes the difference between the function of the grand
            jury and the trial jury.  You're all about probable cause.  If you think that there's
18          evidence out there that might cause you to say "well, I don't think probable cause
            exists," then it's incumbent upon you to hear that evidence as well.  As I told you,
19          in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts
            against what they may be asking you to do if they're aware of that evidence.
20
     Partial Transcript p. 20.[8]
21
            As a practical matter, you will work closely with government lawyers.  The U.S.
22          Attorney and the Assistant U.S. Attorneys will provide you with important services
            and help you find your way when you're confronted with complex legal matters.  It's
23          entirely proper that you should receive the assistance from the government lawyers.

24

25          [8]      Just prior to this instruction, Judge Burns had informed the grand jurors that:

26          [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-
            blown trial, you're likely in most cases not to hear the other side of the story, if there
27          is another side to the story.

28   Partial transcript p. 19.

                                                    10                          07CR2871-DMS

1         But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone.  If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if you're aware of that evidence," Defendant proposes that by making that statement, "Judge Burns also assured the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause."  [Memorandum p. 7.]  Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'"  [Memorandum p. 7.]  From this lash-up Defendant contends:

These instructions create a presumption that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:

(1) I have to consider evidence that undercuts probable cause.

(2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.

(3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily presume that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.

The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be week [sic], but I know that there is nothing on the other side of the equation because it was not presented.  A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

[Memorandum p. 13.]  (Emphasis added.)[2]

_____

[2]      The term "presumption" is too strong a word in this setting.  The term "inference" is more appropriate.  See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three.  963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster

1    Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence

2    that cuts against what they may be asking you to do if they're aware of that evidence," is directly

3    contradicted by <u>United States v. Williams</u>, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no

4    obligation to consider all '<u>substantial</u> exculpatory' evidence, we do not understand how the

5    prosecutor can be said to have a binding obligation to present it."[10]  (emphasis added)).  <u>See also</u>,

6    <u>United States v. Haynes</u>, 216 F.3d 789, 798 (9th Cir.  2000) ("Finally, their challenge to the

7    government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because

8    prosecutors have no obligation to disclose '<u>substantial</u> exculpatory evidence' to a grand jury." (citing

9    <u>Williams</u>) (emphasis added)).

10    However, the analysis does not stop there.  Prior to assuming his judicial duties, Judge Burns

11    was a member of the United States Attorney's Office, and made appearances in front of the federal

12    grand jury.[11]  As such he was undoubtedly aware of the provisions in the United States Attorneys'

13    Manual ("USAM").[12]  Specifically, it appears he is aware of USAM Section 9-11.233 thereof which

14    reads:

15

16

17    <u>County Court v. Allen</u>, 442 U.S. 140, 157 & n. 16 (1979)).  <u>See also</u> <u>United States v. Warren</u>, 25
     F.3d 890, 897 (9th Cir. 1994).

18    [10]     Note that in <u>Williams</u> the Court established:

19         Respondent does not contend that the Fifth Amendment itself obliges the
20    prosecutor to disclose substantial exculpatory evidence in his possession to the grand
     jury.  Instead, building on our statement that the federal courts "may, within limits,
21    formulate procedural rules not specifically required by the Constitution or the
     Congress,"  he argues that imposition of the Tenth Circuit's disclosure rule is
22    supported by the courts' "supervisory power."

23    504 U.S. at 45 (citation omitted).  The Court concluded, "we conclude that courts have no authority
     to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory
24    authority over their own proceedings."  504 U.S. at 55.  <u>See also</u>, <u>United States v. Haynes</u>, 216 F.3d
     789, 797-98 (9th Cir.  2000).  However, the Ninth Circuit in <u>Isgro</u> used <u>Williams</u>' holding that the
25    supervisory powers would not be invoked to ward off an attack on grand jury procedures couched
     in constitutional terms.  974 F.2d at 1096.

26    [11]     He recalled those days when instructing the new grand jurors.  [Partial Transcript pp.
27    12, 14-16, 17-18.]

28    [12]     The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/
     usam/index.html.

1
2
3
4
5
6

In <u>United States v. Williams</u>, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the <u>policy</u> of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of <u>substantial evidence that directly negates the guilt</u> of a subject of the investigation, the prosecutor <u>must present or otherwise disclose</u> such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should <u>not result in dismissal of an indictment</u>, appellate courts <u>may refer violations of the policy to the Office of Professional Responsibility</u> for review.

7   (Emphasis added.)<u>13/</u>  This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure

8   of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or

9   supersede the policy that requires prosecutors to disclose '<u>substantial evidence</u> that directly negates

10  the guilt of a subject of the investigation' to the grand jury before seeking an indictment, <u>see</u> USAM

11  § 9-11.233 ."  (Emphasis added.)<u>14/</u>

12      The facts that Judge Burns' statement contradicts <u>Williams</u>, but is in line with self-imposed

13  guidelines for United States Attorneys, does not create the constitutional crisis proposed by

14  Defendant.  No improper presumption/inference was created when Judge Burns reiterated what he

15  knew to be a self-imposed duty to the new grand jurors.  Simply stated, in the vast majority of the

16  cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no

17  "substantial" exculpatory evidence exists.<u>15/</u>  If it does exist, as mandated by the USAM, the evidence

18

19      <u>13</u>      See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm.  Even

20  if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the

21  United States Attorneys appearing before the grand jury from that source.

22      <u>14</u>

        <u>See</u>   www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm.

23  Similarly, this new section does not bestow any procedural or substantive rights on defendants.

24      Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general

25  right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

26  USAM 9-5.001, ¶ "E".  <u>See</u> www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

27      <u>15</u>      Recall Judge Burns also told the grand jurors that:

28      [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-

1   should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having

2   his or her career destroyed by an Office of Professional Responsibility investigation.  Even if there

3   is some nefarious slant to the grand jury proceedings when the prosecutor does not present any

4   "substantial" exculpatory evidence, because there is none, the negative inference created thereby in

5   the minds of the grand jurors is legitimate.  In cases such as Defendant's, the Government has no

6   "substantial" exculpatory evidence generated from its investigation or from submissions tendered

7   by the defendant.[16]  There is nothing wrong  in this scenario with a grand juror inferring from this

8   state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory

9   evidence were presented, the evidence presented represents the universe of all available exculpatory

10  evidence.

11          Further, just as the instruction language regarding the United States Attorney attacked in

12  Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution,"

13  408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury

14  concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and

15  does not violate the Constitution.  In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth

16  Circuit while reviewing Williams established that there is nothing in the Constitution which requires

17  a prosecutor to give the person under investigation the right to present anything  to the grand jury

18  (including his or her testimony or other exculpatory evidence), and the absence of that information

19  does not require dismissal of the indictment.  974 F.2d at 1096 ("Williams clearly rejects the idea

20  that there exists a right to such 'fair' or 'objective' grand jury deliberations.").  That the USAM

21  imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand

22

23                  blown trial, you're likely in most cases not to hear the other side of the story, if there
                    is another side to the story.
24

25  Partial transcript p. 19.

26  [16]     Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess
    whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause],"
27  Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no
    competent defense attorney is going to preview the defendant's defense story prior to trial assuming
28  one will be presented to a fact-finder.  Therefore, defense submissions to the grand jury will be few
    and far between.

jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[17]  Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was  unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case.  The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas.  408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor").  But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent,"  which was also required by Navarro-Vargas.  408 F.3d at 1207.  In this context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally defective requiring dismissal of this indictment or any indictment.

The "duty bound" statement constitutional contentions raised by Defendant do not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."  Isgro, 974 F.2d at 1094 (citation omitted).  Therefore, this Indictment, or any other indictment, need not be dismissed.

**B.     Defendant's Motion To Dismiss Indictment For Failure to Allege Elements Should Be Denied**

The indictment returned by the Grand Jury in this case plainly sets forth each of the necessary elements of a Title 8, United States Code, Section 1326 "attempted entry" offense.  See United States v. Gracidadas-Ulibarry, 231 F.3d 1188 (9th Cir. 2000) (en banc); see also United States v. Smith Balthier, 424 F.3d 913, 922 n.7 (9th Cir. 2005); Ninth Circuit Model Criminal Jury Instructions, § 9.5A (modified).  Specifically, the Indictment alleges that Defendant: (1) is an alien;

[17]     The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

(2) was previously deported, excluded and removed from the United States; (3) "knowingly and intentionally attempted to enter the United States of America with one purpose, i.e., conscious desire, to enter the United States"; (4) "without the express consent of the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security"; and (5) "committed an overt act, to wit, crossing the border from Mexico into the United States, that was a substantial step toward committing the offense. . .."

In fact, the indictment in this case closely tracks Ninth Circuit Model Criminal Jury Instruction 9.5A (revised) and the language of the Ninth Circuit's en banc decision in Gracidadas-Ulibarry, 231 F.3d at 1196 (". . . we hold the elements of the crime of attempted illegal reentry into the United States under 8 U.S.C. § 1326 are: (1) the defendant had the purpose, i.e., conscious desire, to reenter the United States without the express consent of the Attorney General; (2) the defendant committed an overt act that was a substantial step towards reentering without that consent; (3) the defendant was not a citizen of the United States; (4) the defendant had previously been lawfully denied admission, excluded, deported or removed from the United States; and (5) the Attorney General had not consented to the defendant's attempted reentry.") Indeed, the indictment form used in this case is identical, or virtually identical, to hundreds of other "attempted reentry" indictments filed in this District.  Because each of the requisite elements is pleaded in the Indictment, Defendant's motion should be denied.

Defendant argues that the indictment is defective in that it does not allege a deportation date or a temporal relationship to his removal.  Quite to the contrary, the Indictment alleges that the defendant "was removed from the United States subsequent to November 29, 1999." This date is subsequent to his felony convictions and prior to his "attempted entry" date of August 22, 2007, as charged in the Indictment.  This complies with the requirements of United States v. Covian-Sandoval, 462 F.3d 1090, 1096-98 (9th Cir.2006) (holding that the fact of a prior conviction need not have been submitted to the jury, but the date of a prior removal, which is necessary to determine whether the removal had followed the conviction in time, must be admitted by the defendant or found by a jury); see United States v. Salazar-Lopez,506 F.3d 748 (9th Cir. 2007) ("the date of the

1   removal, or at least the fact that Salazar-Lopez had been removed after his conviction, should have

2   been alleged in the indictment and proved to the jury.")

3                  **C.     Defendant's Motion To Strike Surplusage Should Be Denied**

4          Pursuant to Fed. R. Crim. P. 7(d), Defendant has moved to strike  language in the indictment

5   referring to 8 U.S.C. § 1326(b) and to his removal from the United States subsequent to November

6   21, 2005.  The United States respectfully requests that the court deny this motion, because that

7   section is not prejudicial and is relevant to the charges.

8          Rule 7(d) provides that, on motion by the defense, the Court may strike "surplusage" from

9   an indictment.  Such a motion is addressed to the sound discretion of the district court and should

10  be granted only where an indictment contains "prejudicial or inflammatory allegations that are

11  neither relevant nor material to the charges."  United States v. Terrigno, 838 F.2d 371, 373 (9th Cir.

12  1988); United States v. Ramirez, 710 F.2d 535, 544-45 (9th Cir. 1983). The rule has been strictly

13  construed against striking surplusage.  See United States v. Jordan, 626 F.2d 928, 930 n.1 (D.C. Cir.

14  1980).

15         In this case, inclusion of the penalty section in the indictment is not prejudicial or

16  inflammatory.  It is relevant and material to the charges, especially after United States v. Covian-

17  Sandoval, which stated, "[b]ecause [Covian's] felony conviction was not until 2002, that removal

18  does not support a sentence enhancement, and there was no mention in the indictment or at trial of

19  any other removal."  462 F.3d 1090, 1097 (9th Cir. 2006).  There is no need to strike the reference

20  to section 1326(b) from the indictment, since it informs the accused of the charge so that he might

21  adequately prepare a defense.  Had the indictment not contained a reference to section 1326(b),

22  Defendant would likely argue that his sentence could not be enhanced, since he was never placed

23  on notice that the United States was seeking an enhancement under that section.

24  **D.     Defendant's Motion to Produce Grand Jury Transcripts Should Be Denied**

25         Defendant requests that the United States turn over grand jury transcripts in advance of trial.

26  The United States will comply with 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2.

27  The United States does not presently expect to call any witness that testified before the grand jury

28  in its case-in-chief.  Thus, this request appears to be moot.  Defendant has made no showing of

"particularized need" for grand jury transcripts in this case and thus the veil of secrecy surrounding grand jury proceedings should not be pierced.

"A trial judge should order disclosure of grand jury transcripts only when the party seeking them has demonstrated that a particularized need exists . . . which outweighs the policy of secrecy." In re Grand Jury Proceedings, 62 F.3d 1175, 1178 (9th Cir. 1995) (citation omitted). The typical "particularized needs" include impeachment, refreshing the recollection of, or testing the credibility of witnesses who testify at trial. Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 n.12 (1979). A district court does not abuse its discretion in refusing to order the disclosure of grand jury transcripts for a witness who does not testify at trial. United States v. Daras, 462 F.2d 1361, 1362 (9th Cir. 1972) (per curiam). In fact, the Ninth Circuit has specifically found that a defendant's request for grand jury transcripts in order to "determine whether the testimony of law enforcement officers [who testified before the grand jury] improperly summarized the testimony of other agents" does not constitute a particularized need. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986). The United States will, however, comply with its Jencks Act obligations. Defendant's motion for grand jury transcripts should be denied.

**E.      If Defendant Truly Intends to Pursue A Rule 12.2(b) Defense, the United States May Seek An Examination Pursuant to Rule 12.2(c)(1)(B)**

The Defendant's notice of intent to pursue a Rule 12.2(b) defense provides no information as to the nature or basis of the Defendant's claim of a mental disease or defect which would enable the United States to make a proper determination whether to seek an examination under Rule 12.2(c)(1). Accordingly, subject to receiving further information from the Defendant or clarification during the motion hearing in this case, the United States moves for an appropriate examination.

**F.      The Government Does Not Oppose Leave To File Further Motions, So Long As They Are Based on New Evidence**

The Government does not object to the granting of leave to file further motions as long as the order applies equally to both parties and any additional defense motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion.

**IV**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, the United States requests that the Court deny Defendant's motions and grant the United States' motion for reciprocal discovery.

Dated: January 10, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*s/ Lawrence A. Casper*
LAWRENCE A. CASPER
Assistant U.S. Attorney

07CR2871-DMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR2739-W |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| ALEX SALVADOR RODAS-MEJIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Lawrence A. Casper, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of

UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO: (1) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION; (2) DISMISS INDICTMENT FOR FAILURE TO ALLEGE ELEMENTS; (3) STRIKE SURPLUSAGE; (4) PRODUCE GRAND JURY TRANSCRIPTS; (5) GIVE NOTICE UNDER RULE 12.2; and (6) GRANT LEAVE TO FILE FURTHER MOTIONS

TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    **1.**    **Robert Rexrode, Esq.**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

    **1.**    **None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 10, 2008.

*s/ Lawrence A. Casper*
LAWRENCE A. CASPER

07CR2871-DMS